THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE DAVIS, Defendant-Appellant.

First District (6th Division)   No. 1—87—1871

Opinion filed October 26, 1990.—Rehearing denied November 21, 1990.

Kenneth L. Jones, of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, William D. Carroll, and Thomas O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

A jury convicted the defendant, Willie Davis, of armed robbery and robbery. Following a sentencing hearing, the trial judge found the defendant to be an habitual criminal and sentenced him to natural life imprisonment.

On March 18, 1985, Delores Collins, an employee at a fast-food restaurant, opened the restaurant at 10:30 a.m. and went behind the register. The defendant entered the front door five minutes later. Collins asked if she could help the defendant, and he said, "You know what I want." While standing approximately two feet in front of Collins, he pulled a "big," "dark-colored" gun from a paper bag and pointed the gun at Collins; Collins emptied the contents of the restaurant's two cash registers into the paper bag and handed it to the defendant, who then "calmly walked out of the store." Collins admitted that she was not familiar with guns, but stated, "It wasn't made of plastic. It wasn't a funny gun, it was the real thing." She said it had "this big thing in the outside where the bullets go in it."

Two months later, after a separate robbery, the defendant was arrested in possession of a plastic toy gun. He confessed to the robbery of Delores Collins but said that he used a metal air pistol and that it was not the toy pistol in his possession when he was arrested. Delores Collins testified that the toy gun recovered from the defendant was not the gun she saw in his hand.

■ The defendant first argues that the armed robbery indictment against him was improperly based on the perjured testimony of a police officer and the misconduct of an assistant State's Attorney before the grand jury. The defendant filed a motion to quash the indictment

in which he alleged that Detective Edward Winstead testified before the grand jury that a man approached Collins, *produced a handgun*, announced a robbery and demanded the cash register receipts. After that testimony Winstead said that the defendant gave a statement in which he admitted that which Winstead had just testified to. The defendant maintains that Winstead's testimony was not true and that Winstead knew it was not true because the defendant had given a statement admitting possession of a "toy gun," but never a handgun. The motion to quash also alleged that a copy of Winstead's testimony was attached to the motion. The grand jury transcript is not attached to the motion to quash and is not in the record before us. In his brief the defendant alleged that he was attempting to obtain the grand jury transcript; he has apparently not done so; and he has failed to explain the absence of the grand jury transcript. Consequently, we reject the defendant's claim for his failure to present proper record. See *People v. Majer* (1985), 131 Ill. App. 3d 80, 475 N.E.2d 269.

■ The defendant's claim of prosecutorial misconduct is based on alleged misstatements of law made by the prosecutor in response to a question by a grand juror. The defendant does not refer to any part of the record reflecting the alleged remarks; as noted, the defendant did not present any record of the grand jury proceedings. In addition, prosecutorial misconduct was not asserted as ground for quashal of the indictment in the defendant's motion. Therefore, we will not consider this claim either.

The defendant maintains that we may take judicial notice of a Rule 23 order entered in another case in which the defendant was convicted of armed robbery and sentenced to natural life imprisonment by Judge Sophia Hall. The Rule 23 order (*People v. Davis* (1st Dist. 1989), No. 1—87—0045 (unpublished order under Supreme Court Rule 23)) contained portions of the grand jury testimony of Winstead, but those portions refer to another robbery; they have no reference to Winstead's testimony concerning the robbery of Collins. The Rule 23 order does not support the defendant's position with respect to Winstead's testimony in this case.

■ ■ The order does purport to quote an assistant State's Attorney as defining a dangerous weapon as "a metal object that looks like a gun." Assuming that that remark by the prosecutor is properly before us, we judge that it is insufficient to justify a reversal. A mere misstatement of the law by a prosecutor before a grand jury does not of itself require a dismissal of the indictment. (See *United States v. Buchanan* (10th Cir. 1986), 787 F.2d 477.) Public policy considerations dictate that convictions should not be reversed because of a misstate-

ment of the law by the prosecutor before the grand jury. (*Cf. United States v. Mechanik* (1986), 475 U.S. 66, 89 L. Ed. 2d 50, 106 S. Ct. 938 (procedural errors before the grand jury do not require the reversal of a conviction by a petit jury); see also *United States v. Thomas* (7th Cir. 1986), 788 F.2d 1250.) As a general rule, after conviction, any misstatement of law made by a prosecutor before a grand jury is, for all practical purposes, immaterial, since the issue is whether or not the trial jury was instructed properly. *Cf. People v. Linzy* (1979), 78 Ill. 2d 106, 398 N.E.2d 1.

■■ The defendant next contends that the testimony of Collins was insufficient to establish the use of a dangerous weapon because, he says, his written statement indicated that he used only a toy gun. The defendant specifically maintains that Collins' testimony that the gun was real was nothing more than an opinion of a "young, extremely upset cashier with no experience with firearms" which was "worthless" in comparison with the defendant's confession to the robbery in which he stated that he used an air pistol or pellet gun and the fact that almost two months after this incident he was arrested with a toy gun in his possession shortly after a separate robbery of a different restaurant. We note first that the defendant told the police that the plastic weapon recovered from him at the time of his arrest was not the same "weapon" he used in the Collins robbery. He said that he used an air pistol or pellet gun. Although we need not say at this time that air pistols and pellet guns are, *per se*, dangerous weapons, we can say that, in our judgment, they are not "toy" guns. Moreover, it was for the jury to determine the weight to be given the testimony of Collins. Where the character of an instrument used in a robbery is in issue, it is for the jury to determine whether it was dangerous. (*People v. Agee* (1980), 85 Ill. App. 3d 74, 405 N.E.2d 1245.) Finally, the jury was not obliged to accept as true everything that the defendant told the police. It is for the jury to determine what weight should be given to the statement of the defendant. Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (2d ed. 1981).

After the defendant's post-trial motion had been denied, a hearing began under the Habitual Criminal Act, which provides, in part, that the prosecutor "may file *** a verified written statement signed by the State's Attorney concerning any former conviction" of certain offenses by the defendant. (Ill. Rev. Stat. 1987, ch. 38, par. 33B—2(a).) Before the State began presenting evidence the judge asked the State if it had anything in aggravation. At the request of the prosecutor, the judge then took judicial notice of the jury verdict in the robbery case before him and a presentence investigation report that the State

had filed. The State also introduced certified copies of the defendant's previous armed robbery convictions and the testimony of the keeper of fingerprint records in the Bureau of Identification at Stateville Correctional Center and of an assistant State's Attorney. Their testimony established the identity of the defendant as the person named in the previous armed robbery convictions.

After the State rested the defendant's attorney argued that the State had failed to present a properly verified petition as required under the Act. The assistant State's Attorney said that he had filed a written petition with the court some time before, that the clerk did not have the petition, but that the assistant State's Attorney had tendered it to the defense attorneys. The judge pointed out that his first inquiry was for evidence in aggravation; he did not know that a petition had been filed. The defendant's attorney acknowledged that he had received a copy of the petition, but said it was not verified. The judge noted that verification requires that the petition be made under oath. The defendant objected to the assistant State's Attorney's attempt to swear to the petition. The judge then set the case over for five days.

When the parties appeared at the later date, the judge said that he would strike the proceedings that had taken place and permit the State to start over again "now that I know what the State is proceeding on." The defendant objected, but the judge struck the earlier proceedings and permitted the State to file a properly verified petition seeking life imprisonment. The defendant argues that this procedure constituted a double jeopardy violation.

The State maintains that the double jeopardy provision of the Constitution does not apply to sentencing hearings in general and to hearings under the habitual criminal statute in particular. Both sides have cited a number of cases on this issue, but we need not decide whether the double jeopardy provision of the Constitution is applicable to hearings under the Habitual Criminal Act, since we conclude that, assuming that it is applicable to such hearings, no constitutional violation occurred here.

■ In *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066, the trial judge declared a mistrial over the defendant's objection because the indictment was defective. The Supreme Court rejected the defendant's double jeopardy claim and expressed the rule that "[a] trial judge properly exercises his discretion to declare a mistrial *** if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." (410 U.S. at 464, 35 L. Ed. 2d at 431, 93 S. Ct. at

1070.) In *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 394 N.E.2d 496, relying in part on *Somerville*, the court expressed the applicable rule as follows:

"If, after jeopardy has attached, a mistrial is declared at the prosecutor's request, or by the trial judge *sua sponte*, retrial ordinarily will not be barred if there was 'manifest necessity' for the act. [Citation.] Manifest necessity is usually found where, due to circumstances beyond the control of the parties and the court, it becomes no longer possible to conduct the trial, or no longer possible to reach a fair result based upon the evidence. However, manifest necessity has also been found where an impartial verdict could not be reached because of prosecutorial or judicial error [citations] and where an impartial verdict *could* have been reached but a procedural error by the prosecutor made reversal on appeal a certainty [*Illinois v. Somerville*]." (Emphasis in original.) 75 Ill. App. 3d at 591-92.

■ We believe that the facts of this case are sufficiently similar to *Somerville* to make that case controlling. There is no substantial difference between the defective indictment in *Somerville* and the defective petition in this case. If it may be said that the petition could have been amended, our answer is that it was the defendant who objected strongly to any amendment. There was no overreaching by the prosecutor, and the judge recognized that proceeding further under a defective petition would be futile in that any finding against the defendant might be reversed on appeal. Under the circumstances, the judge exercised sound discretion; and the defendant's constitutional protection against double jeopardy was not violated.

●8 The defendant next argues that the State failed to meet its burden of proving all material allegations of its petition seeking a sentence of life imprisonment under the Habitual Criminal Act. Under the Act the State must establish two prior convictions for Class X felonies, that the third conviction was based on conduct after the effective date of the Act and within 20 years of the first conviction. The State must also establish that the second *offense* was committed after conviction on the first *offense*. (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1(d)(4).) The State offered certified copies of convictions of armed robbery entered on May 21, 1975, and on October 2, 1978. The defendant contends that no evidence was introduced to establish the date of the commission of the offenses for which the defendant had been previously convicted. The specific issue, however, is whether the State has proved that the offense for which the defendant was convicted on October 2, 1978, was, in fact, committed after May 21, 1975, the date

the defendant was convicted of the first offense.

■■ At the outset, we deem it appropriate to address the State's argument that its burden of proof on a hearing under the Habitual Criminal Act is a preponderance of the evidence. Although there is some uncertainty on the question, we believe the better view is that the State must prove the material allegations of its petition beyond a reasonable doubt. *People v. Mays* (1988), 176 Ill. App. 3d 1027, 532 N.E.2d 843; *People v. Gill* (1988), 169 Ill. App. 3d 1049, 523 N.E.2d 1239; *People v. Mason* (1983), 119 Ill. App. 3d 516, 456 N.E.2d 864.

■■ The defendant did not argue in the trial court the failure of the State to establish the date of the second offense for which he was convicted on October 2, 1978. Therefore, we could hold that his claim of error is waived. (*People v. Poole* (1988), 167 Ill. App. 3d 7, 520 N.E.2d 1017.) For the sake of finality, however, we will address the issue, although, for purposes to be illustrated later, we will consider the failure of the defendant to raise any question of the sufficiency of the evidence at the hearing.

The State's verified petition alleged that the crime for which the defendant had been convicted on October 2, 1978, was committed on May 12, 1978. During argument the prosecutor told the judge that the crime for which the defendant was convicted on October 2, 1978, was committed on May 12, 1978. The defendant's attorney made no response to that statement.

The defendant had previously been convicted of armed robbery by a jury before Judge Sophia Hall on October 22, 1986. On December 11, 1986, Judge Hall sentenced the defendant to natural life under the Habitual Criminal Act. In her sentencing order she made findings of fact which included findings that the defendant had been convicted of the same two previous offenses upon which the judge based his sentence in this case. Judge Hall also found that the October 2, 1978, conviction was based on an offense that had occurred on May 12, 1978. The defendant appealed from that judgment of Judge Hall, and that appeal was the subject of the Rule 23 order which the defendant has asked us to judicially notice.

The defendant was convicted in this case on February 19, 1987. At the hearing on its petition, the State offered the order entered by Judge Hall on December 11, 1986. The defendant objected to the court taking judicial notice of Judge Hall's "sentencing." The judge sustained the objection and said he would not consider Judge Hall's finding on the sentence but would consider her findings of fact. The defendant made no objection to that ruling. The State has called our attention to Judge Hall's order and the fact that the judge in this case

judicially noticed her order. The defendant here makes no issue of the fact that the judge judicially noticed Judge Hall's order.

Under all these circumstances, particularly the finding of fact by Judge Hall which was judicially noticed by the trial judge, there was a sufficient basis for the trial judge to conclude that the State had established beyond a reasonable doubt the date of the commission of the second offense. We judge that no error occurred in the defendant's sentence as an habitual criminal.

■■■ The defendant's last contention is that his sentence of natural life violates several State and Federal constitutional provisions. The same constitutional challenges were addressed and rejected by this court in *People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781.

For these reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.